I'd like to reserve my final two minutes for rebuttal, please. Okay. Please, I'll try to help, but keep track of your own time. Yes, I will. Thank you, Your Honor. Good morning. My name is Leslie Bowman, and I am counsel for Mr. Barrueta-Macedo. Your Honors, the issue in the case that's being presented today on behalf of Mr. Barrueta-Macedo has to do with whether or not his prior conviction needs to be an aggravated felony in order to merit the 16-level enhancement that is provided in the United States Sentencing Guidelines under Section 2L1.2b1a. May I ask you a preliminary question? Certainly. Does a felony, other than an aggravated felony, require any term of imprisonment actually being imposed? Not necessarily. It requires to be a felon – well, I guess it would be the opposite. For a misdemeanor, it couldn't be more than a year. But no, it could be a felony and still receive probation, which is what happened in Mr. Barrueta-Macedo's case. All right. I just wanted to make that clear. Yes. Thank you, Your Honor. In any case, what occurred in Mr. Barrueta-Macedo's case, as Your Honor recognized, is that he was convicted of several felony offenses, including aggravated assault, but the court in Texas sentenced him to a term of probation rather than imprisonment. There's no dispute in this case between the parties that Mr. Barrueta-Macedo's prior conviction is not an aggravated felony, and that was recognized by the prosecutor in our case and in the charging documents, which charged him with a violation of Title VIII, Section 1326, with a B-1 enhancement, which is for a prior felony as opposed to a prior aggravated felony. The reason it's not an aggravated felony is because Title VIII, Section 1101 requires, I believe it's A43F, requires that for a crime of violence to be an aggravated felony, the prior sentence must have been a year, and it was not in this case. Your Honors, the reason I believe that the guidelines require an aggravated felony conviction for that 16-level enhancement, despite the fact that the word aggravated felony does not appear in the subsection, is because of the legislative history and the reason for the amendment, which is stated expressly in the guidelines manual. The reason for the amendment is that the commission had been receiving concerns from judges, probation officers, attorneys, that the 16-level enhancement was sweeping in too many different kinds of offenses, from the less serious up until the most serious types of offenses, for example, murder. And they wanted to do something about that. One of the reasons they wanted to do something about that is because the previous guidelines had an application note number five, which would allow the sentencing judge to actually take a look at the seriousness or lack thereof of the prior felony conviction, and then depart downward under certain conditions. So what was happening was there were a tremendous number of downward departures, and as the commission put it, the problem was being addressed on an ad hoc basis. The guidelines attempt to create some sort of uniformity in sentencing, and so that was troublesome. So as they indicated in the reason for the amendment, they said that they were responding to the concerns by providing a more graduated sentencing enhancement of between eight levels and 16 levels, depending on the seriousness of the prior aggravated felony. And in the reason for the amendment, they specifically did use the word aggravated felony. But the commentary note B-4 defines felony as any federal, state, or local offense punishable by imprisonment for a term exceeding one year. It doesn't say that the punishment has to be imposed, but it's possible punishment for a term exceeding one year. How do you translate that into aggravated felony? Well, Your Honor, I think that that may have been addressing a slightly different issue, which is that there was case law that indicated that even if the offense was a misdemeanor for the prior conviction, that it could still have been considered an aggravated felony. And I think that the commission was trying to take out the misdemeanor aggravated felonies from the enhancement. I'm very sympathetic to your argument, because it appears to me, based upon the given reasons for the change, the argument is right. On the other hand, when I get to the guideline as written, and the commentary as written, they don't seem to have written it that way. The way they should have written it, if they were going to write it your way, if they were going to be clear about it, would be to say, as they go down the list here, A, conviction for a felony that's a drug-trafficking offense. They should have said conviction for an aggravated felony, dah, dah, dah. B, conviction for an aggravated felony that is, and then C, conviction for any other aggravated felony. That's the reading you want. Can you help me get there, based on the text? I agree, Your Honor, and of course, that would have made this whole issue much clearer. There wouldn't be an issue. But I think that that's where we get to the rules of statutory construction, where we start with the plain language of a statute, or in this case, a guideline, but it's always important to be very careful to make sure that when it is implemented, that it encompasses the actual intent of the drafters. And this Court and the Supreme Court has held that over and over again in cases like United States v. Fellows. Ultimately, the goal is to ascertain the intent of the drafters. Coronado-Durazo, we rely on the plain language first, but always look to the legislative history to determine whether there's a clear indication of contrary intent. And the case law goes on and on in that light, and I think that's exactly what we need to do here, because if we do apply what appears to be the plain language that doesn't require an aggravated felony, we negate and deny the purpose for the amendment in the first place. And in a case like Mr. Barueta-Macedo's, where prior to the amendment, he would have received a four-level enhancement. Yeah, you would have liked the old guideline. I would have very much, so would my client. But the point is that what we will be doing is sweeping in all these four-level enhancements into the 16-level enhancement and doing exactly the opposite of what the Commission clearly tells us they intended by the amendment. Unless you use, and you didn't suggest this in your brief, you suggested in the Pimentel case, you asked the judge to use the categorical approach. For instance, if you have a wobbler, something that could be either a felony or a misdemeanor, and you look to the charging papers, the transcript and so forth, and show that the statute would encompass, well, actually, if it showed the statute would encompass a misdemeanor as well as a felony, then you have to use the modified categorical approach to show that your client's crime was intended to be within the scope. But even if we did that here, I was trying to analyze it. If you had made that argument, I don't think it would help you a lot. Exactly, Your Honor, and that's why I didn't include it. I'm not actually disputing that the crime is a crime of violence. It only has to do with the sentence and the title of aggravated felony. Okay, would you like to save your remaining time? Yes, thank you. Your Honor, may it please the Court? Is this on? I think it's on. It's on, okay. But you have to speak directly into it. Okay, I'll do that. The government respectfully disagrees. Now, in the confusion about the microphone, please state your name. Oh, I'm sorry. May it please the Court? I'm Chris Cavanias from the District of Arizona, representing the government in both of these cases. And the government respectfully disagrees with the analysis that's being employed by the defense here. The guideline, first I'd like to just again note that the argument that the defendant is raising today was not raised below. The district court was not asked to resolve this question as regarding Mr. Barueta. As to Mr. Pimentel, the one-year argument was made. But as to Mr. Barueta, it was not made. So I think this is a plain error review case, but getting now to whether or not there was any error. Yeah. There was none. The guideline definition is the only definition which controls. The Sentencing Commission, in creating this graduated sentencing enhancement under the 2001 guidelines, achieved its result in the sense that the most serious crimes receive the 16-level enhancement and then it goes down to the 12 and the 8 level. I think it's evident the Sentencing Commission did not want this court or any district court to reference the statute with regard to those 16-level enhancements, especially when you're dealing with crime of violence, because of crime of violence they came up with a new definition. And I think that demonstrates the Sentencing Commission wanted that definition to control. And we don't have to look at intent anyway because the guideline is clear. Additionally, we know the Sentencing Commission knew how to cross-reference the statute if it wanted to because it did so in subsection C. I'm going to ask a slightly wicked question. A wicked question? A wicked question. Okay. You may be familiar with our recent decision in Moreno-Cisneros? I think the defendant did in Pimentel. I dissented in that case. It involved this very guideline, although a different aspect of this guideline. It dealt with a probationary issue, I think, right? It dealt with whether or not sentence imposed included a sentence later imposed because of a probation violation. The majority in that case did what I think they should not have done. They looked to the underlying policies that they thought the guideline should be serving, ignoring the clear language. Are we bound by that methodology? I lost in that case. I insisted upon what I thought was the clear language. Your Honor, I suppose I'm out of my depth as far as remembering all the details about that particular decision. I think here you don't have to reach that question because the plain language is clear. If the plain language was ambiguous. I thought the plain language was clear in that case too. Well, I guess all I would say is in this particular case, I don't think you need to broach or go to the purposes, but even if you did, I think it's evident that this crime of violence is being specifically defined for the reason that, and it seems logical, the Sentencing Commission would believe that it's not the time in prison that's served that's important when you're determining whether somebody should get a 16-level enhancement. It's rather the type of offense. And I think that's the reason that the guideline sets forth the law the way it does, the first prong being we look at the threat in use. The second prong, though, as the defendant concedes, specifically states aggravated assault, that's the crime we're dealing with today. So there's no dispute if it fits the guideline definition. May I ask you what there is in the record that shows that Mr. Barretta's prior conviction was punishable by a term of more than one year under Texas law? Your Honor, if you look at Bonilla-Montenegro, that case that was decided three days ago, the defendant, Pimentel, filed a supplemental citing that case. It notes that, and this is not a plain error case, this is a de novo review case, but there's a paragraph in there. I've got your printed out Ninth Circuit database version on 7829 would be the page. It talks about the PSR not having the statute of conviction, and here the PSR also doesn't have the statute of conviction, but it does list the crime, and this court noted the PSR listed the crime, and that was evidence that was sufficient to show what kind of crime he was convicted of for purposes of the guideline. I'd also note, and let me just be specific there, if you look at the PSR on paragraph 19, it says aggravated assault with a deadly weapon, a felony. There's no dispute it's a felony. There's no dispute it's an aggravated assault. Under the guideline definition, that two-prong definition, we don't have to analyze whether there's a use or threatened use of physical force. We just have to go to the next where it says it includes murder, et cetera, and there's a phrase aggravated assault. So that's the reason why it clearly fits that definition. I'm not sure I'm with you yet. Sure. I'm on paragraph 19 of the PSR. Yes. And I don't see the statute. There's no statute listed, but that's not fatal. And why is it not fatal? First, we have no dispute that it meets the guideline definition, so I would submit that that's not before the court, but if the court analyzes it on its own. Let's get to that, and I may back away based upon the lack of dispute. Sure. Then because it says aggravated assault, in Bonillas-Montenegro, the court noted that even though the PSR did not list the statute of conviction, it listed the crime, and that was sufficient for, in this case, the court to determine that the district court did not err in finding that the burden had been met  Judge Nelson's question was more than crime of violence. The question was length of sentence that could be imposed. How do we know that the length of the sentence could be imposed was more than a year? That's required for the definition of felony. Aggravated assault, one of the reasons that the court in Bonillas-Montenegro found that it was sort of not important the statute wasn't listed, because they could tell by the title of the crime what statute it referred to. Same thing here. There's only one aggravated assault statute in Texas. It's a statute that the government cited in one of its footnotes, 22-22.02, Texas Penal Code, and it talks about what the crime is. And because there's no dispute that this is a felony, there's no dispute it's an aggravated assault, that it just clearly fits within the guideline definition. And there's only one Texas statute that fits that? For aggravated assault, yes. And provided for a sentence of more than one year. Yes, and that's in footnote ‑‑ let me just point you to it, Your Honor. Footnote 4 of the government's brief, under Texas law, aggravated assault is a felony of the second degree, which carries a maximum sentence of not more than 20 years of imprisonment. And that's in footnote 4 of the government's brief. Okay. So based on all of those factors, then, Your Honor, the government respectfully asks this court to find that the district court did not plainly err in determining that the defendant's crime was a crime of violence warranting the 16-level enhancement. Thank you. Any further questions? No. Thank you for your time. Thank you. Your Honors, in regards to the issue of whether this needs to be plain error, I respectfully disagree with the government. There is case law, for example, the case of Flores Payan, that indicates that when we are talking about a purely legal issue, which we are in this case, it has to do with the interpretation and application of the guidelines, that even if the issue wasn't raised below, it can still be reviewed at this level, and we don't even need to reach the level of a plain error review. But if we did, according to Portillo-Mendoza, there is plain error, that the court erred, that the error was clear, which an increase in a sentence is a plain error, and that it obviously affected a substantial right. Again, referring to Portillo-Mendoza, Mr. Barueca Macedo had signed a plea agreement for a six-month cap and received a 27-month sentence. So that also obviously affects the fairness, integrity, and public reputation of the judicial proceedings. Okay. Thank you. Thank you very much. Tricky case. Good arguments. Thank you. The case of Barueca Macedo is now submitted.
judges: Dw Nelson, W. Fletcher, Alsup